On Rehearing.
PROVO STY, J.
The plaintiff state board of health in a petition addressed to the respondent judge made the allegation that the defendant’s bakery was conducted in so unsanitary a manner as to constitute a public nuisance, and prayed for an injunction restraining the defendant from continuing to operate his said bakery until he had shown to the court that the said unsanitary conditions had been remedied.
Defendant filed an exception by which he denied the right of the plaintiff board to stand in judgment in the premises, for the reason that it had no jurisdiction over the matter complained of, the same being under the exclusive jurisdiction of the board of health of the city of New Orleans, and the defendant, with reserve of said exception, filed an answer denying that the unsanitary conditions complained of existed.
The learned respondent judge sustained the exception, and thereupon the case was brought here by certiorari and mandamus.
In support of the exception, it was contended that the statutes creating the plaintiff board and defining its powers do not confer upon it the power to act in a matter of mere local sanitation, such as the correcting of the hygienic conditions in a bakery; but that, if they do, then that the power thus to act cannot be exercised by means of an injunction or civil suit, but only by means of a criminal proceeding, and that, moreover, the conferring of such power upon the plaintiff board, the members of which are appointed by the Governor and not elected by the electors of the city of New Orleans, would be unconstitutional, in so far as the city of New Orleans is concerned, as contravening article 319 of the Constitution,* which provides that:
“The electors of the city of New Orleans shall have the right to choose the public officers who shall be charged with the exercise of the police power and with the administration of the affairs of said corporation in whole or in part.”
[4] The point that the board of health, though armed with criminal remedies, may in a proper case have recourse to a civil proceeding or injunction for suppressing a public nuisance was definitely settled by this court in Board v. Maginnis Cotton Mills, 46 La. Ann. 806, 15 South. 164; and, if one-half of what is alleged in the petition in this case be true (and for the purpose of the exception, it is to be taken for true), the present ease is a very highly proper one for such an injunction.
The question of whether the jurisdiction over the matter of local sanitation of this kind has been conferred upon the plaintiff board, or is reserved to the local board of health, is one depending naturally upon the proper reading, or interpretation, of the several statutes whereby the jurisdictions of these boards are defined. Learned counsel for the plaintiff board, including the learned Attorney General, see the matter very clearly one way; and learned counsel for the defendant, and the learned city attorney and the learned counsel for the city board of health, appearing as amici curiae, see it as clearly the other way. The learned respondent judge adopted the viéw of the defendant. The judges of this court have divided upon the question. The writer of this opinion does not find good ground for a very positive opinion either way; and hence finds no good reason for not adhering on this point to the opinion heretofore handed down.
In undertaking to delimit the respective jurisdictions of these two boards, no enlightenment is to be derived from the statutes *582 preceding Act 192, p. 437, of 1898. Section 3 of this act purports to prescribe the powers and duties of-the plaintiff board. It reads as follows:
“Be it further enacted, etc., that said board shall have all the powers, authority and jurisdiction now possessed by the existing state board of health under present laws now in force, except in so far as modified and changed by the provisions of this act. It shall have exclusive jurisdiction, control and authority over maritime quarantine within the state, as now provided by existing laws of the state. It shall have supervisory power over land quarantine, and over the care and control of infectious and contagious diseases within the state in order to accomplish the subsidence and suppression thereof, and to prevent the spread of the same. Such supervision and control shall be exercised in the manner and to the extent hereinafter laid down in this act. It shall prepare or cause to be • prepared a Sanitary Code for the state of Louisiana, which shall contain and provide rules and regulations and ordinances of a general nature for the improvement and amelioration of the hygienic and sanitary condition of the state. On the adoption of said Code by the board it shall be published at length and in full in at least one newspaper in the city of New Orleans, and in the official journal of the state capitol, on ten successive and consecutive days, and shall also be printed and published in pamphlet form with such number of copies as may be necessary for the distribution for information of health bodies, health and sanitary officers and the public generally. When so printed said Code shall cover and provide for, especially, land and maritime quarantine regulations; the reporting, care and management of cases of infectious and contagious diseases; it shall regulate the manner of keeping and reporting and tabulating vital and mortuary statistics; it shall provide for affording facilities for vaccination, provided the same shall not be made compulsory, except in cases of children attending the public schools; it shall’ regulate the carriage and transportation of persons, freight and dead bodies brought in to the state or transported through or in the state in so far as the same may affect the public health; it shall provide for the carrying out of the laws of the state in regard to the adulteration of articles intended for human food or consumption; it shall provide for the inspection of meats, milk, coal oil and other articles, affecting the public health and safety, where and when the same may be brought into one parish from another, or from outside of the state, leaving to the local boards hereinafter provided, the regulation of the sale or offering for sale of said articles within the parish or municipality to which the same may be brought; and said Code shall contain general rules in regard to such health, sanitary and hygienic subjects, as cannot in the opinion of the state board of health be efficiently and effectively regulated by the local boards. The board shall have power to appoint inspectors and other necessary officers and employés and fix the salaries thereof. All inspectors, officers and employes of the said board shall have power to arrest without warrant all persons violating the provisions of any rule or regulation of the said board, when such violation has occurred within the sight, view or personal knowledge of said inspector, officer or employs, and in all cases where said violation may not have occurred within the sight, view or personal knowledge of said inspector, officer or employs said functionary shall have only the right to arrest in execution of a warrant duly issued by the president of the board. It is hereby made the duty of all sheriffs, their deputies, constables and their deputies, public officers of towns and cities, and all other peace officers, to aid and assist in the arrest and apprehension of all persons violating the articles of any rule or regulation of the state board of health; to themselves arrest and apprehend all offenders committing the offense in their view or sight or within their personal knowledge. The members of the state board of health and every person duly authorized by them may without fear or hindrance enter, examine and inspect all grounds, erections, vehicles, structures, public buildings and places. The state board shall at all times keep in readiness one or more medical inspectors and nurses, medicines, cloth.ing, bedding, appliances, tents and other necessary paraphernalia, so as to repair to any locality in the state that applies to it for assistance upon the outbreak of an infectious or contagious disease, with the view of stamping out the same. An annual appropriation of five thousand dollars shall fes made to start this first help. The lc-feá authorities shall keep up the work at their own expense after it has been started.”
-This law was amended by Act 98, p. 163, of 1906, and the powers of the plaintiff! board with reference to what rules and regulations it might include in its Sanitary Code were greatly enlarged as follows:
“Section 1. That the state board of health for the state of Louisiana, be, and is hereby authorized and empowered in order to further carry into effect Art. 297 of the Constitution of 1898, to revise the Sanitary Code provided for by section 3 of Act 192 of 1898, and to incorporate therein rules and regulations governing the manufacture, sale and inspection of foods, liquors, waters and drugs within the state in so far as the same may affect the public health; to fix standards of purity; to provide for the collection of samples and the entering of premises for this' purpose, to provide for the establishment of a laboratory for the analysis of foods, liquors, drugs and water; *584 to employ an analyst and assistants; and fix and pay their compensation; and to do all other acts as may be requisite and proper to carry this act into effect.”
The powers and duties of the parish and municipal boards of health are fixed by section 7 of said Act 192 of 1898 as follows1:
“Be it further enacted, etc., that said parish and municipal ooards of health shall have power and authority to pass health and sanitary ordinances for defining and abating nuisances dangerous to the public health; to regulate drainage and ventilation with reference to human habitation and places of business and public resort; to regulate the carrying on of trade and business injurious to public health; for the disposition of fecal matter and garbage'; to regulate the erection of buildings with due regard to the filling of lots and the grading thereof, and the arrangement of said buildings; for the vacation of, demolishing of buildings when necessary for the protection of public health; for the registration of births, deaths and marriages, and the keeping of vital statistics to be registered and reported in the state board of health under its instructions and regulations, and generally all health and sanitary ordinances necessary and incident to the proper local sanitation of the parish, city or town in which they exercise their powers.
“They shall act under the supervision and advice of the state board of health, and shall pass no ordinance in conflict or inconsistent with the powers and duties of the state board of health, but shall in all health and sanitary measures which they may adop't, be auxiliary to and act in harmony with the state board of health and shall make reports monthly to said state board of health and furnish such other information as the state board of health may require, the same to be embodied in the annual report of the state board.
“The object and purpose of this act being hereby declared to be to entrust full power and authority to such local boards to establish, control and administer all matters of strictly and purely local sanitation, not affecting other portions of the state.
“Eor the city of New Orleans, the state board alone, shall have power to establish' quarantines. Local boards of health shall have power to establish quarantines with the co-operation of the councils of municipalities, and the police juries. The state board shall have supervisory power over all local quarantines so established.
“All necessary expenses, costs and charges of local sanitation, shall be borne by the parish, city or town, in which the local board shall be established, and in'case the fiscal authorities thereof shall refuse to budget for, appropriate or pay to the same, the local boards shall have right to the writ of mandamus before a court of competent jurisdiction to compel the proper action by said parish, city or town authority.”
The powers and duties of the two boards are further regulated as follows:
“Sec. 8. Be it further enacted, etc., that in the event that any case shall be reported to or come to the knowledge of any local board, which is either deemed to be a case of contagious or infectious disease, or suspected of so being, the local board shall immediately isolate the same and communicate the fact by the most expeditious means at hand to the state board of health, together with the information as to what steps have been taken by the local board to isolate and care for the same, and shall from time to time communicate the progress of the case and disease to the state board of health. On receipt of such information by the said board of health, the president of said board shall if he deem the emergency sufficient and necessary, send expert physicians to be selected by him to examine and diagnose the disease, and if on such examination and diagnosis, the experts shall declare the ease to be one of obnoxious or infectious nature, liable to spread, or to become dangerous to the general public health of the state, the state board of health or its president shall instruct the health officer of the board of health of the parish, city or town, as to what additional steps, if any, shall be taken to isolate the case, and prevent the spread of the contagion or infection therefrom and shall require that the local health officers shall immediately conform thereto, and put the same in operation. In the event that said local authorities shall fail or neglect to so act within a reasonable time, or in so acting shall fail to do so in a manner satisfactory to the state board or its president, the state board or its president shall take charge of the case and manage the same, through its own officers or employes.
“All expenses, costs and charges incurred in the management, control and supervision in such cases shall be borne and paid by the parish, town or city in which the case ma3' be, and on the failure of the parish or municipality to reimburse the state board the amount of its expenditures incurred in such cases, the state board of health shall have the right to proceed by writ of mandamus in any court of competent jurisdiction to compel the payment of the same.
“In ease that any parish, town or city, or any portion thereof, shall become infected with any contagious or infectious disease, to such an extent as to threaten the spread of such disease to the other portions of the state, the state board of health shall issue its proclamation declaring the facts and ordering it in quarantine, and shall order the local boards of health in other parishes, towns and cities, to quarantine against said locality and shall establish and promulgate the rules and regula *586 tions, terms and conditions on which intercourse with said infected locality shall be permitted, and shall issue to the other local sanitary authorities instructions as to the measures adopted in quarantining against persons, goods or other property coming from said infected localities, and these rules and regulations, terms and conditions, shall be observed and obeyed by all other health authorities, provided that should any other of the noninfected portion- of the state desire to add to the regulations and rules, terms and conditions already imposed by the state board, they may do so, on approval of the state board of health. The state board of health may in its discretion, prohibit the introduction into any infected portion of the state, persons acclimated, unacclimated or said to be immune, when in its judgment the introduction of such person would add to or increase the prevalence of the disease. The state board of health shall render to the local boards of health all the assistance in their power and which the condition of their finances will permit.”
Section 9 of the act provides:
“Be it further enacted, etc., that all laws and parts of laws in conflict with, inconsistent with, or superseded by, the provisions of this act are hereby repealed, but all laws or parts of laws, parish or city ordinances, state board of health ordinances, state, parish and municipal rules and regulations now existing and not in conflict with, or inconsistent with or superseded by the provisions of this act are continued in full force and effect, and this act shall not be construed or interpreted so as to deprive the state board of health, or the local board of health of any powers or authorities they may have under existing laws, except in so far as these powers and authorities may be modified or changed by the provisions of this act, and then only to the extent of the modification or change. All those parts of the special Act No. 172 of 1874 and the special Act No. 110 of 1878, and the special Act No. 56 of 1896, and of all other special acts relating to boards of health in towns, cities or parishes and of Act 92 of 1882, which are in conflict with, inconsistent with, or superseded by the provisions of this act hereby repealed, and all other parts of said acts not in conflict with, inconsistent with or superseded by the provisions of this act are continued in full force and effect. The president and secretary of the state board shall not be ex officio members of the board of health for the city of New Orleans, and the president of the state board shall not be the president of the local board of the city of New Orleans.
“The municipal board of health of the city of New Orleans shall have the exclusive right to the collection of all fees and charges, now being made by the present state board of health within the city of New Orleans, other than those accruing from the coal oil inspection and the registration of physicians, midwives and dentists. The municipal board of health of the city of New Orleans shall also have the exclusive supervision or authority over the meat inspection service and sanitary regulations, at the slaughtering pens or abattoir in the parish of St. Bernard, with regard to all meat intended for human consumption within the city of New Orleans.”
Section 2 of the act of 1898, in prescribing the duties and powers of the president of the plaintiff board, provides as follows:
“The duties and powers of said president shall be those incident to like officers in similar corporations and also such other powers and duties now devolved by law upon their predecessors on the present board, as well as those additionally prescribed by the provisions of this act. In addition to said powers and duties heretofore prescribed by existing laws, the president shall have the power after the adjournment of the board, and during the interval of time between the meetings of the board and when the board is not in session to issue all orders and warrants, and take all necessary steps to execute the sanitary laws of the state, and to carry out the rules, ordinances and regulations of the board made thereunder.”
Thus it is seen that the plaintiff board is authorized to make “rules and regulations governing the manufacture, sale and inspection of foods,” and to appoint officers'and employes, and that these inspectors, officers, and employés “have power to arrest without warrant all persons violating the provisions of any of the rules or regulations of said board,” etc.; that the members and officers of said board are authorized to “enter, examine and inspect all grounds, erections, vehicles, structures, public buildings and places,” -and that the president of the plaintiff board is authorized “to take all necessary steps to execute the sanitary law of the state, and to carry out the rules, ordinances and regulations of the board thereunder.”
Under these provisions the plaintiff board seems not only to have the power, but to be charged with the clear duty, to inspect premises where bread is being manufactured, and to take the necessary steps, by civil or criminal proceedings, to enforce the maintenance of sanitary conditions.
*588 On the other hand, we find several provisions which confer like jurisdiction .upon the local board. ' Thus:
“It [the state board of health] shall provide for the inspection of meats, milk, coal oil, and other articles affecting the public health and safety, where and when the same may be brought into one parish from another, or from outside of the state, leaving to local boards hereinafter provided, the regulation of the sale or offering for sale of said articles within the parish or municipality to which the same may be brought.”
Here, an implication arises that matters of purely local sanitation are to be left to the local board; and this is emphasized, in so far as the city of New Orleans is concerned, by the concluding paragraph of section 9 where “the exclusive right to the collection of all fees and charges now being made by the present state board of health” is given to the local board; and where “the exclusive supervision, or authority, over the meat inspection service and sanitary regulations at the slaughtering pens or abattoir in the parish of St. Bernard, with regard to all meat intended for human consumption within the city of New Orleans,” is, in like manner, given to the local board. And section 7 expressly confers upon the local board authority to pass health and sanitary ordinances for defining and abating public nuisances, and to regulate drainage and ventilation of habitations, and the carrying on of any trade or business injurious to the public health.
Section 8, after having provided that the local board should isolate all cases of contagious or infectious diseases, proceeds as follows:
“In the event that said local authority shall fail to so act within a reasonable time, or in so acting shall fail to do so in a manner satisfactory to the state board, or its president, the state board or its president shall take charge of the case and manage the same, through its own officers or employés.”
A dual authority is here conferred; but paramount in the state board or its president, who are made sole judges.
Upon the whole, the intention of the act appears to be to confer a dual authority and duty in matters of local sanitation, imposing it primarily upon the local board, but not restraining the state board from taking the initiative whenever or wherever it may seem proper, except in certain specified cases in which the local board is given exclusive authority. The local boards are made subordinate authorities to the state board- This is made plain by the following provisions of section 7:
“They shall act under the supervision and advice of the state board of health, and shall pass no ordinance in conflict or inconsistent with the powers and duties of the state board of health, but shall in all health and sanitary measures which they may adopt, be auxiliary to and act in harmony with the state board of health and shall make reports monthly to said state board of health and furnish such other information as the state board of health may require, the same to be embodied in the annual report of the state board.”
It will be noted that the local board is not given here, “exclusive” authority as in the concluding paragraph of section’ 9; but that it is simply given authority; and that it is required to “be auxiliary to and act in harmony with the state board and to make monthly reports to said board;” and to “act under the supervision and advice of the state board.”
Our conclusion is that the jurisdiction of the local board is not exclusive, but only concurrent, except as to those cases in which the statute expressly provides that it shall be exclusive; and that, in case of clash, the authority of the state board is intended to be paramount.
We pass, then, to the question of whether the vesting the plaintiff board with this local jurisdiction in the city of New Orleans contravenes article 319 of the Constitution, whereby the electors of New Orleans are given the right to elect the officers who shall be charged with the exercise of the police power of their city or with the administration *590 of its affairs in whole or in part.' There can be no question but that the matter is local in character and pertains to the police of the city, and comes therefore within the purview of article 319. But we think that that article must be read in connection with article 296 which provides that:
“The General Assembly shall create for the state, and for each parish and municipality therein, boards of health, and shall define their duties, and prescribe the powers thereof.”
The mandate here given to the Legislature is so express, explicit, clear, and sweeping that in the recent case of State v. Snyder, 131 La. 145, 59 South. 44, it was held to override the fundamental constitutional principle that the legislative power for state purposes can be validly exercised by the Legislature alone, and cannot be delegated to a subordinate state functionary. It is an express, explicit, clear, and unlimited mandate to the Legislature to define the respective duties and prescribe the respective powers of these two boards. Thereby the Legislature is authorized to give to the state board jurisdiction over local sanitation, if in its good judgment it deems the doing so to be in the public interest. There can, we think, be no question about this. The only question must, therefore, he whether the framers of the article contemplated that this broad mandate should be qualified, overridden, and controlled, in so far as the city of New Orleans is concerned, by article 319. We think it is safe to say that they contemplated the very reverse; for the article goes on and provides that:
“Until otherwise provided by law, both the president and secretary of the state board of health shall be ex ofiicio members of the board of health for the city of New Orleans, the president of the state board to be the president of the local board.”
And that:
“The state board of health shall be' composed of representative physicians from the various sections of the state.”
Not only, therefore, this article 296 was not intended to be controlled by article 319, giving to the electors of the city of New Orleans the right “to elect the officers charged with the exercise of the police power of the city or with the administration of its affairs in whole or in part,” but the president and the secretary of the board, who might not even be citizens of New Orleans, were required to be members of the local board, and the president was required to be the president of the local board. The article 296 clearly contemplated that the state board of health should have jurisdiction over the city of New Orleans, in the same way as over the rest of the state, and that the Legislature should have the broad power to determine the duties of the respective boards as the best interest of the state might require. We adhere, therefore, to the conclusion arrived at in the decision heretofore handed down.
Counsel on both sides have thought they could derive much comfort for their side of this question by reference to the proceedings of the constitutional convention showing the circumstances attending the adoption of these articles 296 and 319; what amendments were offered and rejected, etc. We have not the discussions or reasons which prompted the convention to act in accepting or rejecting amendments. Oftentimes, in large legislative bodies, amendments are rejected simply because the text sought to be amended is thought to be sufficient already to express the idea sought by the amendments to be incorporated into it by the use of different words. We have not found that the said references to the proceedings of the convention have contributed to make matters any clearer. An argument can be based upon them both ways, as has in fact been done.
It is therefore ordered, adjudged, and decreed that the decree herein heretofore hand *592 ed down be reinstated and made the judgment of this court.
SOMMERVILLE, J., dissents.
See dissenting opinion of MONROE, J., 61 South. 668.